**HAMMOND v. MALONEY, Collector of Internal Revenue.**

Civ. No. 3078.

United States District Court
D. Oregon.

April 21, 1948.

Motion to Dismiss Denied Dec. 3, 1948.

See 171 F.2d 225.

Robert T. Jacob and S. J. Bischoff, both of Portland, Or., for plaintiff.

Victor E. Harr, Asst. U. S. Atty., of Portland, Or., and Thomas R. Winter, Sp. Asst. to U. S. Atty., of Seattle, Wash., for defendant.

McCOLLOCH, District Judge.

This cause duly came on for trial on January 12th to January 16th, 1948. The plaintiff appeared herein in person and by Robert T. Jacob and S. J. Bischoff, his attorneys, the defendant appeared herein by Thomas R. Winter, Special Assistant to the United States Attorney. Evidence was introduced by the parties hereto and the cause was thereupon taken under advisement.

The court now makes and files herein the following

## Findings of Fact

1. That at all the times herein set forth the plaintiff was an individual taxpayer and resident and domiciled in the State of Oregon and was during all of the times herein mentioned engaged in the general contracting business.

2. That at all the times herein mentioned, defendant, J. W. Maloney, was the United States Collector of Internal Revenue for the District of Oregon.

3. Jurisdiction of the above entitled cause is based on the provisions of 28 U.S.C.A. § 1340, and the provisions of Sections 22, 23, 322 and 3772 of the Internal Revenue Code of the United States, 26 U.S.C.A.Int.Rev.Code, §§ 22, 23, 322, 3772.

4. The amount in controversy exceeds the sum of $3,000.00.

5. On July 27, 1945, the Commissioner of Internal Revenue of the United States assessed against plaintiff a deficiency in income and surtaxes for the taxable year 1943 in the sum of $145,537.77, together with interest thereon in the sum of $11,609.13, being a total of $157,146.90.

6. Plaintiff paid the said sum as follows: $150,592.88 was paid in cash on August 17, 1945, and $6,554.03 was paid by credit allowed for refund on account of overassessment for the year 1941.

7. That the aforesaid deficiency in income and surtax and the collection thereof by defendant was illegal.

8. That on August 22, 1945, plaintiff filed with the Commissioner of Internal Revenue a claim for refund of the said taxes and interest illegally collected and retained; that said claim was in all respects in due and proper form and at the time of the commencement of this action more than six months had expired since the filing of said claim for refund and the Commissioner of Internal Revenue had neither allowed or rejected the said claim prior to the commencement of this action.

9. That the determination of the aforesaid deficiency in income and surtaxes by the Commissioner of Internal Revenue was based upon the report of the Revenue Agent, W. G. Williams, dated November 6, 1944 (Plaintiff's Exhibit 20) and the reasons set forth therein; that the deficiency assessment was due in part to the refusal of the Commissioner to recognize the existence of a partnership between the plaintiff above named and William A. Hammond during the tax years 1942 and 1943 and in part to the rejection by the Commissioner of the partnership's method of accounting of the income from the partnership business and reporting the income in the income tax returns for said years. More specifically the Commissioner rejected the accrual method of accounting maintained by the partnership and the plaintiff and substituted another method of accounting based in part upon the accrual method, in part on the percentage of profit method and in part upon completed contract basis.

10. The plaintiff and William A. Hammond are respectively father and son. William A. Hammond is the only son of plaintiff and his wife. Plaintiff was engaged in the contracting business all his life and had become a very successful and prominent contractor. William A. Hammond was 24 years of age and married when the partnership was formed. The education of his son William was channeled from the earliest childhood to prepare him to engage in the contracting business. It was William's own choice as well. To that end father and son worked together at all times. While a young man and going to grammar and high school the son spent all of his spare time with his father on the various construction jobs that were being carried on, receiving training in that work. Upon graduation from high school, the son went to a university and was graduated as a civil engineer. He immediately went to work for his father

performing work which required skill, intelligence and knowledge. On February 3, 1942, plaintiff and William A. Hammond entered into a written partnership agreement by the terms of which the partnership was to continue during their joint lives. The interest of the plaintiff was to be 75 per cent and of William A. Hammond 25 per cent. They were to share in the profits and losses upon that basis. It was provided that each of the partners shall have an equal voice in the control of the business and operation of the partners, that accurate books of account should be kept, that upon dissolution of the partnership or death of either of the partners, the business should be wound up, the debts and the surplus divided according to their aforesaid interests in the partnership. They agreed that plaintiff should not withdraw from the partnership any more than $22,-500 00 a year and William A. Hammond $7,500.00 a year and that the excess earnings should be permitted to remain and be used as working capital of the company.

11. This partnership agreement was entered into at that time because William A. Hammond intended to go to Brazil and engage in the contracting business there. Plaintiff and his wife were eager for their son to remain in Portland and to engage in the contracting business with the plaintiff. Plaintiff persuaded William A. Hammond to refrain from going to Brazil by taking him into the partnership with him at that time.

12. After the written partnership agreement was entered into and executed on February 3, 1942, the son was made General Manager of the partnership business, suitable offices were set up for him in the office of the company, his activities were greatly increased, he acted as chief engineer for large projects with a large staff of engineers under him. He personally negotiated the contracts for large construction jobs, supervised the work of making bids on the contracts and did a great deal of work that required great responsibility as well as knowledge, experience and ability and in every respect performed functions normally performed by the partner in the management, operation and control of the business. The court finds that the partnership agreement was actually entered into, that it was made in good faith, that it was actually carried out thereafter in good faith and that the said William A. Hammond contributed substantially to the control and management of the business and performed vital additional services which contributed substantially to the production of the income of the business during all of the tax years in question.

13. At the time that the partnership was entered into between plaintiff and his son, as aforesaid, it was determined by them to keep the said partnership agreement secret between them for the time being because two of the key employees of the plaintiff who were essential to the successful operation of the business were insisting upon being given a partnership interest in the business. Plaintiff was unwilling to take them into partnership with him and it was feared that if the formation of the partnership between plaintiff and his son were disclosed that these two men would terminate their employment, creating very serious impairment to the business. Because of the agreement to maintain secrecy, it was necessary for the plaintiff to continue to take all contracts in his own name and ostensibly carry on the business in his name. The court finds that the secrecy was maintained for a valid business reason and not for any fraudulent or unlawful purpose and as soon as the need for secrecy disappeared the existence of the partnership was made public.

14. Prior to the tax year 1938 plaintiff conducted his contracting business in the name of a corporation. The corporation kept its books and reported its income on a percentage of completion basis but plaintiff individually kept his records and reported his personal income on the cash basis. The corporation was dissolved as of the end of the year 1938 and thereafter and until the formation of the said partnership the plaintiff conducted the contracting business in his own name. At the time of the dissolution of the corporation, the corporation had been engaged in the construction of the State Capitol Building for the State of Oregon at Salem, Oregon. Upon dissolution of the corporation, plaintiff individually completed the construc-

tion of that project. In 1937 the corporation reported the income from that project on the percentage of completion basis. In 1938, plaintiff applied to the Commissioner of Internal Revenue for permission to adopt individually the accrual method of accounting except as to the income to be reported from the completion of the State Capitol building project. He excepted that project from the accrual method and requested permission to report the remainder of that project on the percentage of completion method in order that the method of accounting as to that particular project should be consistent.

15. In 1938 the Commissioner of Internal Revenue granted to the plaintiff permission to maintain his accounts and to report his income on the accrual method except as to the remainder of the State Capitol project and the court finds that plaintiff did in and after 1938 maintain his accounts and reported his income to the Commissioner of Internal Revenue upon the accrual method except that in 1938 he reported the balance of the State Capitol project on the completion method of accounting.

16. That during all of the time since 1938 to and including the tax years in question the plaintiff and the said partnership uniformly adopted and maintained the accrual method of accounting and reported their income to the Commissioner of Internal Revenue upon that method of accounting; that no change was made by them in the method of accounting and reporting income during all of said time.

17. The court finds that the accounts were honestly, straight-forwardly, frankly and fairly kept and maintained during all of the tax years in question, the accounts clearly reflected the income of the partnership and of the plaintiff and that the method of accounting was not maintained or carried on with any purpose of evading or minimizing plaintiff's tax liability.

18. The court finds that during the tax years in question, plaintiff and the said partnership accrued on their books all income which they had the right to receive and accrued as deductions all liabilities incurred for expense in the operation of the business and that all accruals of income and of deductions were properly entered upon the books of the partnership and were properly reflected in the income tax reports in the tax years in question, that the Commissioner of Internal Revenue had no basis in fact or in law for the rejection of plaintiff's method of accounting and reporting the income for the tax years in question and the substitution of another method and that the method of accounting employed by the Commissioner of Internal Revenue was an improper method of accounting since it was partly accrual and partly transactional being based in part upon the accrual basis adopted by plaintiff and in part upon the percentage of profit basis and in part upon the completion of contract basis.

19. On February 3, 1942, plaintiff entered into a profit sharing agreement with an employee, Henry M. Mason, in words and figures as follows:

"Agreement Of Employment

"This Agreement, made and entered into on this 3rd day of February, 1942, by and between Ross B. Hammond, sole proprietor, doing business as Ross B. Hammond, hereinafter called 'First Party', and Henry M. Mason, hereinafter called 'Second Party'

"Witnesseth:

"Whereas the Second Party has been in the employ of the First Party almost continuously for a period of thirteen years, and the First Party recognizing the value of the services, ability and trustworthiness of the Second Party, and the First Party wishing to permit the Second Party to participate in the profits of the First Party's contracting business; and

"Whereas, the Second Party has been acting as General Superintendent and General Manager of the construction business of the First Party, with full power of attorney to sign all documents, and subject only to direction of the First Party; and

"Whereas, the Second Party has been acting as General Superintendent and General Manager of the construction business of the First Party, with full power of attorney to sign all documents, and subject only to direction of the First Party; and

"Whereas the First Party wishing to have the Second Party assume a greater

responsibility in connection with the management of the general contracting activities of the First Party;

"Now, Therefore, the Parties hereto, agree as follows:

"1. Compensation Of Second Party And Method Of Payment: The First Party hereby agrees that he will pay for the services of the Second Party by permitting him to participate in the net profits of the operation of the First Party's construction business upon the basis of twenty (20) percent of the profits earned each calendar year, after all operating, financing, administrative, and other like expenses have been deducted, but before deduction of State and Federal Income Taxes.

"It is specifically understood and recognized between the parties that the operations of this business require the use of large sums of money to be available for financing the operation of the construction and contracting business, and, therefore, to insure the continued success of the business and to provide ample working capital, it is hereby agreed that the earnings of the Second Party shall be paid to him on a basis of a drawing account of Five Hundred ($500.00) Dollars per month, but the Second Party will not be permitted to withdraw in excess of Ten Thousand Dollars ($10,000.00) per year. Any funds amounting to more than $10,000.00 per year shall be permitted to remain in the company, to be used for working capital for use in the contracting and constructing business of the First Party. These funds in excess of $10,000.00 that shall be permitted to remain under the control of the First Party for financing and working capital of the construction business of the First Party shall bear no interest.

"2. Cancellation: This agreement may be cancelled by either party giving the other party 90 days' written notice, and/or the same may be changed or modified at any time by mutual consent of the parties hereto. It is further understood and agreed that said contract will be automatically cancelled if the said Second Party should leave the employ of the First Party of his own accord.

"The Second Party further expressly agrees that should he sever his connection with First Party and desire to withdraw the earnings accumulated to his account, he will give one year's written notice thereof to the First Party, and the First Party will not be obligated to pay such funds to the Second Party until one year after receipt of said written notice from the Second Party.

"Should Second Party elect to cancel this agreement or voluntarily leave the service of the First Party, then, and in either event, Second Party shall not receive any percentage of any profit earned by the First Party upon any work done or any contracts entered into during such calendar year, and the payment to the said Second Party of an amount equal to $500.00 per month for the time employed during such current calendar year shall constitute full and complete payment for all services and/or the use of the funds of the said Second Party for said current calendar year.

"Should the First Party desire to cancel this agreement, he shall notify the Second Party in writing ninety (90) days prior to the date of such cancellation and the compensation due the Second Party shall be upon the basis of twenty (20) percent of the net profits, as described in Paragraph 1 hereof, as shown by the books of the First Party, from January 1st of that year to the date of written notice of cancellation, plus $1,500.00 to cover compensation for the 90 days employment service from the date of the written notice.

"3. Drawing Account: Should the drawing account of $500.00 per month, or $6,000.00 per year, as defined in Paragraph 1 above, exceed in any calendar year the percentage of profits to which the Second Party is entitled under this agreement, this difference between the amount of money to which the Second Party is entitled for his services on the basis of this agreement, as outlined in Paragraph 1, shall be charged against any moneys which have accrued to the account of the Second Party, and the amount of money owing the Second Party by the First Party shall be reduced by this amount.

"4. Nature Of Agreement: It is expressly understood and agreed by and between the parties hereto that this agree-

ment is a contract of employment and that the Second Party does not hereby acquire a proprietary interest in the business of the First Party, but the amounts paid to Second Party shall represent compensation for services rendered.

"In Witness Whereof, the parties hereto have affixed their names and seals to the within agreement on the day and date first above given.

> "Ross B. Hammond Co.
> "By (s) R. B. Hammond
> First Party
> "By (s) H. M. Mason
> Second Party

"Subscribed and sworn to before me, the undersigned, a Notary Public, on this 3rd day of February, 1942.

> "(s) Rosalie Novak
> "Notary Public for Oregon
> "My Commission expires 10/21/42"

20. On the same date plaintiff entered into a profit sharing agreement with an employee, A. V. Peterson, which is the same as the foregoing contract except that the share of the profits was to be 15 per cent and the monthly withdrawal was limited to $400.00 per month with a maximum annual withdrawal of $7,500.00 per year.

21. During the tax year 1942, the share of the profits earned by the said Mason and Peterson computed in accordance with the terms of the said contracts was the sum of $86,635.88 and for the tax year 1943 the share of the profits earned by the said Mason and Peterson computed in accordance with the said contracts was the sum of $77,366.37. That the share of the profits of the said Mason and Peterson for said tax years was computed upon the same basis as the plaintiff's profits were computed in accordance with the method of accounting employed by plaintiff and in accordance with the income reported by the plaintiff to the Commissioner of Internal Revenue. That the share of the profits earned by the said Mason and Peterson in said years was credited to their accounts in the said tax years and accrued on the books of the company and said profits were charged against the contracts upon which the said Mason and Peterson performed their services in order to determine the profit or loss from said contracts in the said tax years.

22. The court finds that the said contracts were actually entered into on said dates, that they were made in good faith, that the said employees earned in said years the amount of the profits credited to them and accrued on the books in said years, that the profits so accrued to them were proper deductions in the said tax years as expense in reporting plaintiff's income for the tax years 1942–1943; that said profits were subsequently paid to them in cash, and that there is no basis in fact or in law for the disallowance of those two items as deductions in the said two tax years.

23. The court finds that when the Revenue Agent made the examination of plaintiff's books in August, 1944, resulting in his report dated November 6, 1944 (Plaintiff's Exhibit 20), the Revenue Agent examined the said contracts and had knowledge of all of the facts pertaining to the deduction of the share of the profits accrued to them in the said two tax years in question, that he examined into the propriety of the said deductions and that the said Revenue Agent in said report did not disallow or reject the said deductions by reason of the accrual of the Mason and Peterson share of the profits as deductions and the Commissioner of Internal Revenue did not determine and assess any deficiency in income tax by reason of said transactions.

24. This action for refund was commenced on March 16, 1946. On July 19, 1946, defendant interposed its answer herein consisting of a general denial but did not set up any counterclaim, set-off or defense predicated upon the claim that Mason's and Peterson's share of the profits accrued in 1942 and 1943 were improperly taken as deductions. On October 18, 1947, defendant filed a motion herein for leave to file an amended answer in which for the first time it was claimed that the said items should not be allowed as a deduction in those tax years and that the income tax of the plaintiff should be recomputed by increasing its income by said amounts Plaintiff objected to the allowance of the motion on the ground that the defendant failed to make any showing why the mat-

ters tendered by said proposed amended answer were not presented at an earlier date; that there was no showing of due diligence; that the said amendment introduced a new cause of action by the defendant against the plaintiff; and that the set-off denominated "Additional Defense" was barred by the statute of limitations contained in the Internal Revenue Code. After extensive hearing upon said motion and objections, an order was entered herein on November 14, 1947, overruling defendant's motion for leave to interpose said set-off. This order was made on all of the grounds stated in the said objections. Upon the trial of the action, the court permitted evidence to be introduced upon said issue subject to plaintiff's objection and has reconsidered all of the objections heretofore made in the light of the evidence introduced upon the trial and the court now finds that all of the said objections were well taken and also finds that upon the merits the share of the profits credited on the books of the plaintiff and the partnership to the said Mason and Peterson and accrued as expense and deductions were in any event properly entered and taken.

25. The court finds that the deficiency in income tax assessed by the Commissioner of Internal Revenue as aforesaid and collected by the defendant as aforesaid were illegal and that plaintiff is entitled to recover the said payments with interest thereon at the rate of six per cent per annum from the date that the collector received payment thereof.

26. In determining the deficiency in income tax and surtaxes for the year 1943 which resulted in the aforesaid unlawful assessment and collection, the Commissioner of Internal Revenue determined that a part of the income reported by plaintiff for the tax year 1941 was erroneously included in that year and that said portion should have been included in the subsequent tax years of 1942 and 1943 and by reason thereof the Commissioner of Internal Revenue determined that taxpayer was entitled to a refund of a portion of the income tax paid in 1941 to the extent of $6,554.03. When the defendant collected the aforesaid unlawful assessment of the sum of $157,146.90, he allowed a credit to the plaintiff on account thereof to the extent of $6,554.03 which should have been paid to the plaintiff as a refund under the Commissioner's determination and accepted in addition to said credit the aforesaid sum of $150,592.88 in payment of the aforesaid unlawful assessment. Subsequent to the commencement of this action, the United States of America commenced an action in this court against Ross B. Hammond, the plaintiff above named, Civil Action No. 3964, for the recovery of the aforesaid sum of $6,554.03 in the event that this court determines in this action that plaintiff is entitled to recover the full sum of $157,146.90. Upon the trial of the action, it was stipulated in effect that instead of trying the aforesaid action, No. 3964, adjustment shall be made with respect to the said credit of $6,554.03 in accordance with the ultimate determination of the court in this action. Since plaintiff only paid the sum of $150,592.88 and received credit for the said sum of $6,554.03, plaintiff is entitled to recover herein the sum of $150,592.88 with interest thereon at the rate of six per cent per annum from the aforesaid date of payment and is entitled to the entry of a judgment dismissing the aforesaid action No. 3964 with prejudice.

Upon the foregoing findings of fact, the court makes and files herein the following

## Conclusions of Law

1. That plaintiff has sustained the allegations of the complaint by a preponderance of the evidence.

2. That the deficiency in income tax and surtaxes assessed against and collected from the plaintiff were unlawful and without just cause.

3. That plaintiff and the partnership of which he was a member had the right to maintain their accounts on the accrual method of accounting and to report their income on said basis during the tax years in question.

4. That the books of account of the plaintiff, during the tax years in question, were maintained on a true and accurate accrual basis and that his income tax reports were made on a true and correct accrual basis in accordance with the said accounting method.

5. That the Commissioner of Internal Revenue had no authority under the facts in this case to reject plaintiff's method of accounting and to substitute another method.

6. That plaintiff's method of accounting and reporting income clearly reflected the income during the tax years in question.

7. That the method of accounting employed by the Commissioner of Internal Revenue was not authorized or warranted by any provision of the Internal Revenue Code or Regulations.

8. That the partnership agreement entered into between plaintiff and William A. Hammond was entered into and carried out in good faith, the business of the said partnership was carried on by them as co-partners during the tax years in question and the Commissioner of Internal Revenue was not justified in rejecting the said partnership in computing plaintiff's income tax liability for the tax years in question.

9. The defendant is not entitled to set-off against plaintiff's claim for refund any claim for additional tax arising out of the accrual of the Mason and Peterson share of the profits in the tax years in question because (a) the said set-off was not interposed timely and no showing of diligence for the failure to do so was made to the court, (b) the right of the Commissioner of Internal Revenue to assess additional tax by reason of said transactions was barred by the statute of limitations at the time defendant attempted to interpose the set-off (the Commissioner of Internal Revenue did not at any time make any determination or assessment of any deficiency in income tax by reason of said transactions), and (c) upon the merits the Commissioner of Internal Revenue could not have lawfully assessed any deficiency in income tax by reason thereof.

10. Plaintiff is entitled to recover from the defendant the taxes unlawfully collected from the plaintiff as set forth in the findings of fact.

11. The court directs that judgment be entered in favor of the plaintiff and against the defendant for the sum of $150,592.88 with interest thereon at the rate of six per cent per annum from August 17, 1945, together with his costs and disbursements incurred herein and for the entry of a judgment in the action No. 3964 dismissing said action with prejudice. The foregoing shall be an opinion within 28 U.S.C.A. § 764.[1]

---

[1] Prior to revision Sept. 1, 1948.